STATE *vs.* AUTOMOBILE AND ALBERT L. TAYLOR, Claimant.

Sagadahoc.    Opinion December 27, 1922.

*A claimant to get possession of an automobile seized while engaged in the illegal transportation of intoxicating liquors, in violation of the laws of the State, must prove title, as the issue is one of fact involving proof.*

Whether the seizure is legal or not, a claimant alleging ownership must prove his title to enable him to gain possession of a car libeled.

The issue which becomes decisive of the right of the claimant to possession of the libeled car is one of fact involving proof of title.

The case also shows by positive evidence the falsity of the claimant's testimony as to his ownership of the car.

On report.    On January 10, 1922, the sheriff of Sagadahoc County and a Federal enforcement officer seized the automobile involved in this case while engaged in the illegal transportation of liquors together with the liquors found in the car, without a warrant, and the next morning obtained a warrant and libeled both the liquors and the car.    On January 19, 1922, Albert L. Taylor became a party to the proceedings as claimant of the automobile.    Claim denied.

The case is fully stated in the opinion.

*Edward P. Murray,* for claimant.

*Arthur J. Dunton,* for the State.

SITTING:    CORNISH, C. J., SPEAR, PHILBROOK, DUNN, WILSON, DEASY, JJ.

SPEAR, J.    This case involved the disposal of an automobile admitted to have been engaged in the illegal transportation of intoxi-

cating liquors, in violation of the laws of the State, at the time of its seizure. A warrant was issued for the seizure of the liquors the morning following their seizure and the sheriff filed a libel for the forfeiture of the liquors, and also one for the forfeiture of the car, on the eleventh day of January, 1922, upon which notice was duly ordered. On the nineteenth day of January, 1922, Albert L. Taylor became a party to the proceedings as claimant of the automobile.

The claimant contended at the hearing upon the libel that the State must show: First—A legal seizure; Second—That the claimant had knowledge of and consented to the illegal transportation of the liquors. The State, on the other hand, contends that the claimant had no standing in court unless he proved that he was owner of the car, if he alleged ownership in his claim; and the claim sworn to and filed in court did so allege, as follows: "And now comes Albert L. Taylor, of Brewer, in the County of Penobscot, whose business is that of . . . , and specifically claims the right, title and possession in the items of property hereinafter named, as having a right of possession thereof at the time when the same were seized."

We think the position of the State is well taken; whether the seizure was legal or not, the claimant alleging ownership must prove his title to enable him to gain possession of a car libeled. The State's contention would seem to be axiomatic, inasmuch as there is no legal or equitable ground, or reason, upon which a car belonging to one person, whoever he may be, should be turned over to another who has failed to prove ownership. And this would seem emphatically true when the name of the rightful owner, other than the claimant, was proved by the very testimony upon which the claimant seeks to gain possession.

The issue, therefore, which becomes decisive of the right of the claimant to possession of the libeled car is one of fact involving proof of title.

It is not our purpose to enter into a lengthy analysis of the claimant's testimony. It is so palpably unreasonable, inconsistent and unreliable, that a detailed analysis would tend to cast a reflection upon the capacity of the court to detect from the inherent falsity of testimony a manifest fraud. A few references, however, may profitably be made. The claimant claims to have purchased the car of Mr Striar, the man who was driving it when it was seized, for $2250. This was August 15th. A receipt for $500 was given August 15th.

A receipt for the balance, $1750, was given October 28th, two months and thirteen days later than the alleged date of the purchase of the car. He was earning $2.69 a day on the railroad winters and $45.00 a week summers, he says. He paid $1750, in currency, which he asserts he had previously earned, had let out, and collected in within three days of October 28th. He testified upon this point as follows: "Now, how much of it had you received from people you had let it out to?" "A. About eight hundred dollars." "Q. About eight hundred?" "A. Yes, sir." "Q. Who did you receive that from?" "A. Different parties." "Q. Well, name some of them?" "A. Mr. Dalton." "Q. Can you name someone else that you received money from at that time?" "A. I can, but they asked me not to bring them into it."

What is the significance of the last question and answer? It would be difficult to conceive of a more flimsy reason for declining to name those who were owing him money. Assuming his statement to be true we are at a loss, even, to fancy any other normal person composed of such delicate fibre, that he would not have coveted the opportunity to reveal the name of his debtors, proof of whose existence would have been to him such a legitimate source of advantage.

He then further testified as follows: "Q. But you said this money that was paid you was for borrowed money that was repaid you?" "A. Well, I wouldn't say exactly borrowed money . . . Money that they owned me." "Q. Was this all paid to you about the 28th day of October?" "A. Within three days of that." "Q. Then all of the other money you must have acquired since the purchase of the auto?" "A. Yes, sir."

The claimant was unprepared for the questionnaire propounded to him by the County Attorney as to the source of the lump sum of $2250.00 and on redirect by his own attorney, he had a new, but equally ridiculous version.

"The County Attorney has asked you about where you got this money. Tell where you got most of it, this $1750, as a part of it?" "A. Got it in a stud game, twelve hundred dollars." "Q. Stud, what?" "A. Poker."

The case also shows by positive evidence the falsity of the claimant's testimony as to his ownership of the car. On October 26th, two days before the claimant pretends to have paid to Striar $1750 to complete the payment on this car, Striar executed and delivered,

in consideration of $624.00, to the Knowles & Dow Company, of Bangor, a chattel mortgage of the identical car which the plaintiff claims to have fully paid for two days later. The mortgage was not discharged until January 26th, 1922.

In connection with the mortgage is another incident which dovetails directly into it in contradiction of the good faith of the alleged sale of Striar to the plaintiff. On August 15th, the claimant gave to Striar what is called a Holmes Note, describing the car and the terms of payment, but it is significant that that instrument was not recorded and afforded no security to Striar against the sale to an innocent purchaser. Moreover, the inherently false testimony of the claimant, considered in connection with these instruments, and the possession and use of the car by Striar, when it was seized, conclusively proves that the pretended sale was without foundation, planned and executed for the sole purpose of inventing and furnishing evidence upon which the pretended owner might come into court and make an effort to salvage the car from the forfeiture of the law.

We have not overlooked the fact that the claimant was corroborated in his testimony as to the payment of $1750, in bills, to Striar, but the corroboration of his story, so inherently improbable that it cannot be believed, subtracts nothing from the improbability.

*Claim denied.*